UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH K. BENNINGTON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-4455 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant United States of America's ("United States") motion for partial summary judgment against plaintiff Joseph K. Bennington ("Bennington"). Dkt. 21. Having considered the motion, response, reply, and relevant law, the court finds that the United States's motion for partial summary judgment should be GRANTED.

**I. BACKGROUND**

Bennington alleges that on December 6, 2016, while the two were stopped at an intersection in Humble, Texas, Immigrations and Customs Enforcement ("ICE") Agent Peter Loera "backed his vehicle into . . . Bennington's vehicle . . . causing significant damage to [his] vehicle and injuries to [him]." Dkt. 1 at 4. Agent Loera filed a Driver's Crash Report with the Texas Department of Transportation on the day of that accident. Dkt. 21-1 at 2. In the report, Agent Loera report "there were no injuries as a result of this accident." *Id.*

Bennington first presented his claims administratively to the Department of Homeland Security ("DHS") and ICE on May 10, 2017. Dkt. 1 at 3. Bennington specifically claimed property damages to "numerous areas of the front of [his] truck and steering wheel," and personal injury damages because he suffered from "[w]hiplash and [he] had to have injection on C7-C8 after the

accident." Dkt. 21-1 at 4. Bennington filed this suit pursuant to the Federal Torts Claims Act ("FTCA") on November 26, 2018. Dkt. 1. DHS denied Bennington's claim on August 1, 2019, "[a]lthough administrative review of the claim [had] not been completed [because] filing of suit terminates administrative adjudication of a claim." Dkt. 21-3 at 7.

The court issued a scheduling order in this case on April 12, 2019. Dkt. 14  Bennington's expert witness designation deadline was set for June 3, 2019. *Id.* Discovery closed on July 31, 2019. *Id.* Dispositive motions and all other pretrial motions were due on August 14, 2019. *Id.*

On August 13, 2019, the United States filed its motion for partial summary judgment. Dkt. 21 at 1. This motion sought summary judgment on Bennington's personal injury claims only. *Id.* Bennington filed his response on September 3, 2019. Dkt 22 at 1. In addition to addressing the United States's arguments, Bennington also asked this court to give leave to "supplement his disclosures" and, in effect, allow him to designate additional experts as an alternative to granting the United States's motion. *Id.* at 21.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 436 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2540 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable

to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

The court will first examine the United States's motion for partial summary judgment before turning to Bennington's request to modify the scheduling order.

**A. Motion for Partial Summary Judgment**

The United States argues that Bennington's failure to "come forth with qualified expert opinion evidence to prove that the accident caused his claimed injuries" entitles it to judgment as a matter of law. Dkt. 21 at 8.

Under Texas law,[1] "[t]he general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665–66 (Tex. 2007) (citing *Ins. Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966)). However, Texas law acknowledges "an exception to the general rule whereby causation findings linking events and physical conditions could, under certain circumstances, be sufficiently supported by non-expert evidence." *Guevara*, 247 S.W.3d at 666 (citing *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970)). Non-expert testimony "is adequate to prove causation in those cases in which general experience and common

---

[1] Under the FTCA, the United States grants a limited waiver of sovereign immunity. 28 U.S.C. § 2674. This allows for "claims against the United States . . . for injury or loss of property, or [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, for a personal injury claim arising from an act or omission taking place in Texas, Texas law governs the claim. *See id.; see also Bodin v. Vagshenian*, 462 F.3d 481, 489 (5th Cir. 2006).

sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Guevara*, 247 S.W.3d at 666 (quoting *Lenger*, 455 S.W.2d at 733). Such lay testimony "could suffice to support a causation finding between the automobile accident and basic physical conditions which (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are[,] within the common knowledge and experience of laypersons, caused by automobile accidents." *Guevara*, 247 S.W.3d at 667.

*Guevara* also was concerned with the possible exacerbation of pre-existing conditions as a result of an automobile accident. The plaintiffs, suing as survivors on behalf of an elderly decedent, claimed that injuries sustained in a automobile accident resulted in the decedent's death more than six months after the accident. *Id.* at 663-664. However, the evidence showed that the decedent suffered from "significant" previous medical conditions, and he did not suffer any great injuries in the accident. *Id.* at 664. "No medical records from the hospitalization were introduced and no medical testimony was introduced," only medical bills. *Id.* The lack of medical expert testimony on the causal link between the decedent's injuries in the car crash and his eventual death meant that the evidence was "not legally sufficient to prove what the conditions were that generated all the medical expenses or that the accident caused all of the conditions and the expenses for their treatment." *Id.* at 670. The *Guevara* court remanded the case for consideration of what damages the lay witness testimony could prove, but cautioned that "[a]bsent expert proof of the [decedent's medical] conditions and their causes, judgment for the expense of treatment is not supported by legally sufficient evidence." *Id.* At 669. In the instant case, Bennington argues that the accident

4

exacerbated his pre-existing cervical injuries.[2] Thus, like the plaintiffs in *Guevara*, Bennington must demonstrate the essential element of causation through medical expert testimony.

The United States has produced the report of its medical expert, Dr. Stephen Esses, showing that Bennington had preexisting back injuries and that there was no mention of the car accident in his medical files. Dkt. 21-4 at 1-2. Dr. Esses's report notes "that Bennington was undergoing prior treatment for multiple disc protrusions . . . and herniations with spinal stenosis . . . [i]n the months before the automobile accident." Dkt. 21 at 9. Importantly, Dr. Esses notes that no documentation indicating Bennington either sustained any significant injury as a result of the accident or that his symptoms changed in any substantial way after the accident exists in the record. Dkt. 21-4 at 2. In Dr. Esses's opinion, "there does not appear to be any substantial change in the scans taken before and after the accident," and Bennington has not required any treatment for injuries sustained in the accident. *Id.* at 2–3. Through its expert witness, the United States has carried its initial burden to show no evidence to support a critical element of Bennington's claim. The burden now shifts to Bennington to show "by competent summary judgment proof that there is an issue of material fact warranting trial." *See Transamerica Ins. Co.*, 66 F.3d at 718–19.

Bennington states in response that he "does not now and has never [contested] that he had pre-existing medical problems," but claims that "such problems were aggravated, exacerbated[,] and made more severe by the injuries he sustained in the collision," pointing to "[Bennington's] attached sworn affidavit and that of his non-retained medical expert and principle treating physician, Dr. Mark Egerman, M.D." Dkt. 22 at 1. The court will examine each in turn.

---

[2] Bennington also cites other minor injuries, like whiplash and muscle soreness, but as discussed below, these claims also fail for lack of evidentiary support.

5

Bennington's affidavit attests to the injuries and property damage sustained in the accident. Dkt. 22-6 at 1–2. However, Bennington is not an expert who can testify to medical causation under Texas law. While he might testify to causation that would be known to a common person, that is not the issue underpinning his personal injury claim. Aggravation and exacerbation of preexisting conditions does, which is instead a complex matter of medical science. Bennington's affidavit is thus insufficient to prove causation. *See Guevara,* 247 S.W.3d at 669 ("Absent expert proof of the conditions and their causes, judgment for the expense of treatment is not supported by legally sufficient evidence").

Bennington's other proffered summary judgment evidence concerns his treating physician, Dr. Egerman. Dkt. 22 at 1. But Bennington has neither designated Dr. Egerman as an expert witness, nor has he produced any expert opinion of Dr. Egerman in accordance with either this court's scheduling order or Rule 26(a)(2)(B). In fact, Bennington has not sufficiently designated any expert witnesses in this case. The scheduling order requires that expert witnesses "be identified by a report listing the qualifications of each expert, each opinion the expert will present, and the basis for each opinion." Dkt. 14. Under Rule 26, "a party must disclose to the other parties the identity of any witness it may use at trial" to present expert opinion testimony. Fed. R. Civ. P. 26(a)(2). Such an expert must, if retained to provide testimony, provide a written report of the witness's opinions and the basis for those opinions, as well as the witness's qualifications. *Id.* If the witness is not required to give a written report, the party must disclose a summary of the facts and opinions to which the witness will testify. *Id.*

Instead of designating experts and submitting their reports, Bennington listed six clinics at which he received medical treatment, along with their address and telephone number. Dkt. 17 at 3.

6

One expert was listed by name—Dr. Robert Luanikitis, not Dr. Egerman—but no "report listing the qualifications of each expert, each opinion the expert will present, and the basis for each opinion." *Id;* Dkt. 14.  Bennington further stated that there were no "non-retained experts expected to have knowledge concerning his investigation of the incidents made the basis of this lawsuit." Dkt. 17 at 4.

Bennington states that Dr. Egerman, "his non-retained treating physician, . . . has agreed to testify [on] his behalf in this case[,] and he will confirm that Plaintiff's collision injuries post-collision medical problems thereby caused are real, serious[,] and disabling."  Dkt. 22 at 2. Bennington's argument that his treating physician will testify at trial fails, however, because Dr. Egerman has not been designated as a witness and has not provided any of the requisite disclosures under either this court's scheduling or Rule 26.  Absent these disclosures, Dr. Egerman could testify only as a lay witness under Rule 701, which specifically excludes opinion testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  *See Soden v. Freightliner Corp.*, 714 F.2d 498, 511 (5th Cir. 1983); Fed. R. Evid. 701(c).  Therefore, the court will not consider his opinion that of an expert and his testimony is insufficient to prove causation in this case.  *See Guevara,* 247 S.W.3d at 669.

Bennington's response brief also states that Dr. Egerman has provided an affidavit in this case.  Dkt. 21-7.  However, the court can find no such affidavit in the records provided to it. Bennington appears to refer to a business records affidavit affirming the authenticty of certain medical records, some of which contain written statement of Dr. Egerman. *Id.* at 2.  Even if this court were to accept Dr. Egerman as an expert witness, the affidavit provided is not an affidavit from Dr. Egerman, nor does it express any medical opinion relevant to the causation inquiry.  Bennington

argues that "the obvious disparity between the opinions expressed by Dr. Egerman and those of . . . Dr. Esses creates a critically material, case-dispositive fact issue." Dkt. 22 at 17. But, as discussed, Dr. Egerman has not provided an opinion, and so there is no disparity of opinion at all.

Bennington's failure to provide any expert testimony is fatal to his claim. The United States has shown that there is no evidence of medical causation between the accident and any alleged exacerbation of Bennington's injuries, and Bennington has failed to offer necessary expert testimony to demonstrate a genuine issue of material fact. Without this element, the United States is entitled to judgment as a matter of law. *See Guevara,* 247 S.W.3d at 669

**B. Motion to Modify the Scheduling Order**

Partway through his response brief to the United States's motion for partial summary judgment, Bennington states that he "will be pleased to supplement his disclosures to specifically include Dr. Egerman." Dkt. 22 at 13. The court construes Bennington's request as a motion to modify the scheduling order and will consider its merits below. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

The court considers four factors when deciding a motion to modify a scheduling order: "(1) the explanation for the failure [to submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)) (alteration in original).

Bennington has given no explanation for his failure. Bennington provided his deficient expert witness disclosures on June 3, the day on which disclosures were due. Dkt. 17; Dkt 14.

8

Discovery closed on July 31. Dkt. 14. His response brief, in which this motion was contained, was not submitted until September 3. Dkt 22. Bennington had ample time to submit a sufficient expert witness list and make the required disclosures, but he waited until three months after the disclosure date to ask this court for leave to supplement. The need for expert testimony in this case is settled Texas law. There does not appear to be any obvious reason for Bennington's failure to timely provide an expert witness report or to ask this court for a modification to its scheduling order.

       The potential prejudice to the United States in granting such a motion would be great, as well. It would mean effectively reopening discovery more than three months after it closed and four months after the United States submitted its expert witness disclosures. Moreover, the United States has relied upon Bennington's failure to provide an expert witness of his own to prepare its motion for partial summary judgment, and has prepared for any trial based upon the work its expert witness has done on the case. To the degree that a continuance would cure such prejudice, it would mean pushing trial back and potentially litigating summary judgment again.

       The only factor weighing in Bennington's favor is the importance of the modification. Without modification to the order, Bennington's personal injury claims will fail. However, "[the importance] of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." *Geiserman*, 893 F.2d at 792 (citing *Hull v. Eaton Corp.*, 825 F.2d 448, 452 (D.C. Cir. 1987). In sum, this court is unpersuaded that modifying the scheduling order is justified in this case.

## IV. CONCLUSION

Because he has not shown cause for any modification of the scheduling order, Bennington's motion to modify the scheduling order is DENIED. No genuine issue of material fact exists as to causation for Bennington's personal injury claim, and the United States has met its burden of showing that it is entitled to judgment as a matter of law. Therefore, the United States motion for partial summary judgment as to Bennington's personal injury claims (Dkt. 21) is GRANTED.

Further, the United States's motion to suspend the scheduling order pending a ruling on its motion (Dkt. 26) is DENIED AS MOOT.

Signed at Houston, Texas on December 3, 2019.

_____
Gray H. Miller
Senior United States District Judge